**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| HAI HUYNH, | ) |
| | ) |
| Plaintiff, | )   Civil Action No. 23-cv-03175-LKG |
| | ) |
| v. | )   Dated:  September 23, 2024 |
| | ) |
| WASHINGTON METROPOLITAN | ) |
| AREA TRANSIT AUTHORITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION

### I.    INTRODUCTION

In this civil action, the Plaintiff, Hai Huynh, brings negligence claims against the Defendant, the Washington Metropolitan Area Transit Authority ("WMATA"), arising from an incident that occurred at and around the Capital Heights Metro Station in Washington, DC on July 29, 2020.  *See generally* ECF No. 4.  WMATA has moved for judgment on the pleadings, or, alternatively for summary judgment, pursuant to Fed. R. Civ. P. 12(c) and 56.  ECF No. 18. This motion is fully briefed.  ECF Nos. 18, 33 and 34.  No hearing is necessary to resolve the motion.  *See* L.R. 105.6 (D. Md. 2023).  For the reasons that follow, the Court: (1) **GRANTS** WMATA's motion and (2) **DISMISSES** the complaint.

### II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

#### A.    Factual Background

In this civil action, the Plaintiff brings negligence claims against WMATA arising from an incident that occurred at and around the Capital Heights Metro Station on July 29, 2020, while he was traveling on a Metrorail train.  *See generally* ECF No. 4.  In the complaint, Plaintiff asserts a negligence claim against WMATA based upon: (1) a failure to "observe due care and

---

[1] The facts recited in this memorandum opinion are taken from the complaint, the parties' joint statement of facts and the parties' supplemental joint statement of facts.  ECF Nos. 4, 18-1 and 21.  Unless otherwise stated herein, the facts are undisputed.

precaution for passenger(s) in [and] around the train;" (2) a failure to "provide adequate security and protection for Plaintiff; and (3) a failure to "exercise reasonable care of the passengers under the circumstances then and there existing." *Id*. As relief, Plaintiff seeks to recover monetary damages in an amount that exceeds $75,000.00. *Id*. at Prayer for Relief.

<u>The Parties</u>

Plaintiff Hai Huynh is a resident of the District of Columbia. ECF No. 4 at ¶ 1.

Defendant WMATA is an interstate compact agency and instrumentality of the District of Columbia, the State of Maryland and the Commonwealth of Virginia that provides mass public transportation in these jurisdictions. *Id*. at ¶ 2.

<u>The July 29, 2020, Incident</u>

The following facts about the July 29, 2020, Incident are undisputed. On the evening of July 29, 2020, Plaintiff rode in Metrorail car #7232 on the Metro's Blue Line in the direction of the Largo Town Center Station. ECF No. 18-1 at ¶ 1 (the joint statement of undisputed facts (the "JSOF")). It is undisputed that no Metro Transit Police Department ("MTPD") officers were onboard the train in which Plaintiff was riding. JSOF at ¶ 4.

Plaintiff sat in a center-facing seat next to the middle doors of the Metrorail train, and he was using and looking down at a cell phone in his hands while traveling on the train. *Id*. at ¶¶ 2 and 3. But Plaintiff briefly looked up from his cell phone when passengers boarded the train at the Stadium-Armory Station. *Id*. at ¶ 5.

Plaintiff looked twice at an unknown male (the "Assailant"), who boarded the train at the Stadium-Armory Station with two other males and sat in a forward-facing seat that was located two rows away from Plaintiff. *Id*. at ¶ 6. Plaintiff then looked back down at his cell phone. *Id*. at ¶ 7. The Assailant sat in his seat for approximately six minutes. *Id*. at ¶ 8

Plaintiff also briefly looked up from his cell phone when a man with a bicycle approached the center of the train, and then he again returned his focus and attention to his cell phone. *Id*. at ¶¶ 9 and 10. The Assailant got up from his seat and stood in front of Plaintiff for seven seconds. *Id*. at ¶ 11. Plaintiff did not look up from his cell phone as the Assailant got up and stood in front of him. *Id*. at ¶ 13.

It is undisputed that the Assailant grabbed Plaintiff's cell phone and punched Plaintiff. *Id*. at ¶ 14. It is also undisputed that the Assailant stepped away from Plaintiff while holding Plaintiff's cell phone, and then the Assailant came back to Plaintiff and spoke briefly with

Plaintiff.  *Id.* at ¶ 15.  The parties agree that this incident took place while the train Plaintiff was traveling on was located in the tunnel leaving the Benning Road Station in Washington, DC, and that the incident lasted 15 seconds.  *Id*. at ¶¶ 16 and 17.

After the Assailant briefly spoke with Plaintiff, the Assailant and two other males immediately exited the train's railcar #7232 through the bulkhead door and entered the adjoining railcar, railcar #7233.  *Id*. at ¶ 18.  As the three individuals exited railcar #7232, Plaintiff walked to the opposite end of the railcar.  *Id*. at ¶ 19.  Plaintiff then pressed the emergency call button to contact the train operator.  *Id*. at ¶ 20.

It is undisputed that, at 7:40 p.m., the train stopped and the train doors opened at the Capitol Heights Station in Capitol Heights, Maryland.  *Id*. at ¶ 21. It is also undisputed that, at 7:41 p.m., the train operator radioed WMATA's rail Operations Center Control to convey Plaintiff's report of an incident in railcar #7232.  ECF No. 21 at ¶ 32. (the supplemental joint statement of undisputed material facts (the "SJSOF")).

At 7:42 p.m., WMATA rail traffic controller contacted MTPD dispatch to report an incident on the train.  SJSOF at ¶ 33.  In addition, at 7:42 p.m., the Capitol Heights Station's manager met Plaintiff on the train platform and Plaintiff told the station manager that he had been assaulted and one of his phones had been stolen.  JSOF at ¶ 22.

At 7:43 p.m., the Assailant and the two males boarded another train heading toward the Franconia-Springfield Station on the opposite side of the platform.  *Id*. at ¶ 27.  Plaintiff videotaped this train using another cell phone that he was carrying. *Id*. at ¶ 28.

The station manager and Plaintiff walked up and down the platform as the train remained on the platform and WMATA held the train at Capitol Heights Station with the doors open.  *Id*. at ¶ 25.  Thereafter, Plaintiff gave his contact information to the station manager and he then left the Capitol Heights Station.  *Id*. at ¶¶ 29-30.

At 7:49 p.m., the station manager contacted MTPD to convey what Plaintiff had reported to him.  *Id*. at ¶ 24.  Plaintiff later returned to the Capitol Heights Station and the MTPD officer interviewed him and photographed the contusion on his face.  *Id*. at ¶ 31.

B.      **Procedural History**

Plaintiff commenced this action in the Circuit Court of Prince George's County, Maryland on July 25, 2023.  *See* ECF Nos. 1, 4.  On November 21, 2023, the Defendant removed to the case to this Court.  ECF No. 1.

On February 23, 2024, the Defendant filed its motion for judgment on the pleadings or, alternatively, for summary judgment, a memorandum in support thereof, and a joint statement of undisputed facts.  ECF No. 18, 18-1, 18-2.  On March 6, 2024, Defendant filed a supplemental joint statement of supplemental undisputed facts and physical video evidence.  ECF Nos. 21 and 22.

On July 25, 2024, Plaintiff filed a response in opposition to the Defendant's motion. ECF No. 32.  On August 1, 2024, the Defendant filed a reply brief.  ECF No. 34.

The Defendant's dispositive motion having been fully briefed, the Court resolves the pending motion.

III.    **LEGAL STANDARDS**

A.  **Fed. R. Civ. P. 12(c)**

Fed. R. Civ. P 12(c) provides that "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  When deciding a Rule 12(c) motion, the Court applies the standard for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014) (stating that the motion tests only the sufficiency of the complaint).  A lack of subject-matter jurisdiction may be raised by the movant in a Rule 12(c) motion.  Fed. R. Civ. P. 12(h)(2)(B), (h)(3).  When a Defendant challenges subject-matter jurisdiction, the court views the pleadings "as mere evidence on the issue, and may consider evidence outside the pleadings  . . . ."  *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999) (citation omitted); *see also Smith v. Washington Metro. Area Transit Auth.*, 290 F.3d 201, 205 (4th Cir. 2002) (quoting *Williams v. United States*, 50 F.3d 299, 304 (4th Cir.1995)) ("the court is free 'to consider exhibits outside the pleadings to resolve factual dispute concerning jurisdiction'").

**B.  Fed. R. Civ. P. 56**

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co*., 773 F.2d 592, 595 (4th Cir. 1985).  In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied,* 507 U.S. 972 (1993).  But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim.  *See Celotex Corp.*, 477 U.S. at 322-23.  Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Id.* at 323.  And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment."  *Detrick v. Panalpina, Inc*., 108 F.3d 529, 536 (4th Cir. 1997).  And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

**C.  Choice Of Law**

Lastly, a federal court exercising diversity jurisdiction must apply the substantive law of the state in which it sits, including the state's choice-of-law rules.  *See, e.g., Volvo Const. Equip.*

*N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 599–600 (4th Cir. 2004) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941) (observing that forum state's choice-of-law rules are substantive)).  And so, when the Court must decide an issue regulated only by state law, it applies the forum State's choice-of-law rules.  *See Walker v. Nat'l R.R. Passenger Corp.*, 703 F. Supp. 2d 495, 501 (D. Md. 2010) (applying the substantive law of Maryland in a case against Amtrak where jurisdiction was based not on diversity of citizenship but on a federally owned corporation); *see also A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1463 (D.C. Cir. 1995) ("[A] federal court applies state law when it decides an issue not addressed by federal law, regardless of the source from which the cause of action is deemed to have arisen for the purpose of establishing federal jurisdiction.").

Relevant here, the State of Maryland adheres to the *lex loci delicti* rule to determine the applicable law in tort actions.  *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 744 (2000); *see also Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 625 (2007) ("We see no reason to discontinue our adherence to the principles of *lex loci delicti*.").  Under this rule, "the substantive tort law of the state where the wrong occurs governs."  *Hauch v. Connor*, 295 Md. 120, 123 (1983).  Given this, the Court "[applies] the law of the State where the injury—the last event required to constitute the tort—occurred."  *Lab. Corp. of Am. v. Hood*, 395 Md. 608, 615 (2006); *see also Angeletti*, 358 Md. at 746; Restatement (First) of Conflict of Laws § 377 (1934) ("The place of the wrong is the state where the last event necessary to make an actor liable for an alleged tort takes place.").  In this regard, this Court has held that "an injury is deemed to occur where the plaintiff first suffers harm, even if the tortious conduct subsequently results in additional or more severe harm elsewhere."  *Williams v. Gyrus ACMI, Inc.*, 790 F. Supp. 2d 410, 414 (D. Md. 2011) (citing *Burnside v. Wong*, 412 Md. 180, 200 (2010) ("[A] medical injury may occur 'even though all of the resulting damage to the patient' has not yet occurred.").

## IV.   ANALYSIS

WMATA has moved for judgment on the pleadings, or, alternatively for summary judgment, pursuant to Fed. R. Civ. P. 12(c) and 56, upon the grounds that: (1) Plaintiff's negligence claim based upon a failure to provide adequate security and protection is barred by the doctrine of sovereign immunity and (2) Plaintiff cannot establish the elements of his negligence claims.  ECF Nos. 18 and 18-2.  In his response in opposition to WMATA's motion,

Plaintiff counters that the Court should deny WMATA's dispositive motion, because: (1) he has properly pled the elements of his negligence claim; (2) WMATA "had a duty to make sure that his journey on the WMATA transit system was safe and free from harm[;]" and (3) WMATA is not entitled to sovereign immunity with regards to his negligence claim, "as it relates to its employees' failure to protect [him] from the assault." ECF No. 33-1 at 5-6.  In addition, Plaintiff argues that entry of summary judgment in WMATA's favor is not appropriate, because he requires discovery to fully respond to WMATA's motion for summary judgment. *Id*. at 6-7. And so, Plaintiff requests that the Court deny WMATA's motion. *Id*. at 7.

For the reasons that follow, the pleadings in this matter make clear that Plaintiff's negligence claim, based upon a failure to provide adequate security and protection, is barred by the doctrine of sovereign immunity.  The undisputed material facts in this case also show that the Plaintiff cannot establish the elements of his negligence claim.  Plaintiff has also not met his burden to show that he should be allowed to conduct discovery before the Court resolves WMATA's motion for summary judgment.  And so, the Court: (1) GRANTS WMATA's motion and (2) DISMISSES the complaint.

### A.  Plaintiff's Negligence Claim Based Upon Failure To Provide Adequate Security Is Barred By The Doctrine Of Sovereign Immunity

As an initial matter, WMATA argues with persuasion that the Plaintiff's negligence claim based upon a failure to provide adequate security and protection is barred the doctrine of sovereign immunity.  In the complaint, the Plaintiff alleges, among other things, that WMATA failed to provide adequate security and protection for him, which resulted in the assault that occurred during the July 29, 2020, Incident.  ECF No. 4 at ¶¶ 13 and 14.  Pursuant to the interstate compact (the "Compact") by and between the District of Columbia, the State of Maryland and the Commonwealth of Virginia, these three jurisdictions have conferred their respective sovereign immunities upon WMATA.  *See Morris v. Washington Metro. Area Transit Auth.*, 781 F.2d 218, 219 (D.C. Cir. 1986); *Sanders v. Washington Metro. Area Transit Auth.*, 819 F.2d 1151, 1154 (D.C. Cir. 1987); *Smith*, 290 F.3d at 206; *see also* Md. Code Ann., Transp. § 10-204(80) (2018).  In this regard, Section 80 of the Compact describes WMATA's sovereign immunity as follows:

> The Authority shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agents committed in the conduct of any proprietary function, in accordance with the law

of the applicable signatory (including rules on conflict of laws) but shall not be liable for any torts occurring in the performance of a governmental function.)

Md. Code Ann., Transp. § 10-204(80) (2018).  Section 76(a) of the Compact also authorizes WMATA "to establish and maintain a regular police force, to be known as the Metro Transit Police, to provide protection for its patrons, personnel, and Transit facilities."  *See* Md. Code Ann., Transp. § 10-204(76) (2018).  And so, there can be no genuine dispute in this case that the security and protection of WMATA's patrons is assigned to the MTPD.

Courts have long recognized that law enforcement is a quintessential governmental function.  *Beebe v. Washington Metro. Area Transit Auth.*, 129 F.3d 1283, 1287 (D.C. Cir. 1997) (citing *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1216 (D.C. Cir. 1997)).  Given this, the Court agrees with WMATA that the Plaintiff's negligence claim here, based upon WMATA's alleged failure to provide adequate security and to protect him from a crime, is a claim challenging WMATA's law enforcement function.  *See Davis v. Transp. Sec. Admin.*, 264 F. Supp. 3d 6, 11 (D.D.C. 2017) (quoting *Dant v. District of Columbia*, 829 F.2d 69, 74 (D.C. Cir. 1987)) ("WMATA's police activities are an exercise of a 'governmental' function, and . . . lie outside the scope of [WMATA's] waiver of sovereign immunity.") (citation omitted). For this reason, Plaintiff's negligence claim based upon a failure to provide adequate security and protection is barred by WMATA's sovereign immunity.

### B.   The Undisputed Material Facts Show That Plaintiff Cannot Prevail On His Negligence Claim

To the extent that Plaintiff's negligence claim is not barred by the doctrine of sovereign immunity, WMATA also persuasively argues that that the undisputed material facts in this case show that Plaintiff cannot establish the elements of his negligence claim for several reasons.

First, the Court observes as an initial matter that District of Columbia law governs Plaintiff's negligence claim in this case, because the July 29, 2020, Incident occurred in the District of Columbia.  *Lab. Corp. of Am. v. Hood*, 395 Md. 608, 615 (2006) (holding that the Court applies the law of the State where the injury occurred).  And so, to establish a *prima facie* case of negligence in this case, the Plaintiff must prove: (1) that WMATA owed him a duty; (2) WMATA breached that duty; and (3) his injury was proximately caused by that breach. *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793 (D.C. 2011) (citations omitted).

In this regard, District of Columbia law provides that "[a] common carrier is required to protect its passengers against assault or interference with the peaceful completion of their journey." *Milone v. Washington Metro. Area Transit Auth.*, 91 F.3d 229, 231 (D.C. Cir. 1996) (quoting *Matthews v. S. Ry. Sys.*, 157 F.2d 609, 610–11 (D.C. Cir. 1946)). But the harm to the Plaintiff must have been foreseeable for this duty to arise within the context of a criminal act. *See McKethean v. Washington Metro. Area Transit Auth.*, 588 A.2d 708, 717 (D.C. 1991) (defendant will be liable only if the criminal act is so foreseeable that a duty arises to guard against it) (citing *Cook v. Safeway Stores, Inc.,* 354 A.2d 507, 509–510 (D.C. 1976)). And so, WMATA is not liable to the Plaintiff, if it neither knows, nor should have known, about the criminal conduct of a third person. *Id.*; *see also* Restatement (Second) of Torts §§ 314A cmt. d, e; 302B (1965).

Second, the undisputed material facts show that WMATA had no duty to guard against the criminal assault of the Plaintiff that occurred during the July 29, 2020, Incident, because its employees could not have anticipated that assault. The undisputed material facts about the July 29, 2020, Incident show that the Assailant initially occupied his seat on the Metrorail train for about six minutes after boarding the train and that he initially had no contact with the Plaintiff. JSOF at ¶ 8. It is also undisputed that, when the Assailant got up from his seat and stood in front of Plaintiff, he did so for approximately seven seconds and the Plaintiff did not look up from his cell phone or interact with the Assailant at that time. *Id.* at ¶¶ 11-13.

It is also undisputed that the subsequent assault, during which the Assailant grabbed Plaintiff's cell phone and punched Plaintiff, and then briefly stepped away from Plaintiff while holding Plaintiff's cell phone and then returned to speak with Plaintiff, lasted 15 seconds. *Id.* at ¶¶ 14-16. The parties also agree that Plaintiff pressed the emergency call button to contact the train operator after the assault concluded and the Assailant had already left the railcar. *Id.* at ¶¶ 18-20.

Given these undisputed material facts, WMATA argues with persuasion that the July 29, 2020, Incident was a sudden attack that lasted just a few seconds. The undisputed material facts also make clear that WMATA that had no knowledge of the assault until after the assault concluded and the Assailant had left the railcar. Given this, the unrebutted evidence in this case shows that WMATA had no reason to have had an increased awareness of any danger to Plaintiff

and that WMATA was also not aware of the assault until after it had concluded.  Under such circumstances, WMATA had no duty to protect Plaintiff from the assault.

Lastly, to the extent that Plaintiff could establish that WMATA owed him a duty, the undisputed material facts show that the Plaintiff cannot establish that WMATA breached any duty owed to him.  In the complaint, the Plaintiff alleges that WMATA failed to protect him from an ongoing attack during the July 29, 2020, Incident.  ECF No. 4 at ¶¶ 5-6, 9-10 and 13. But, as discussed above, the undisputed material facts in this case show that the Plaintiff first alerted WMATA about the attack after the assault concluded and the Assailant had left the railcar.  JSOF at ¶¶ 18 and 20.  And so, WMATA could not have breached any duty to protect Plaintiff from the assault, because it was not aware of the assault when it occurred.

The Plaintiff also cannot show that WMATA breached a duty to render aid following the assault.  In this case, the undisputed material facts show that the station manager met the Plaintiff on the train platform following the assault and that the Plaintiff told the station manager that he had been assaulted and that one of his cell phones had been stolen.  JSOF at ¶ 22.  It is also undisputed that WMATA rail traffic controller contacted  MTPD to report the July 29, 2020, Incident.  SJSOF at ¶ 33.  There is, however, no evidence before the Court to show that the Plaintiff required first aid or other assistance following the July 29, 2020, Incident.  And so, again, the unrebutted evidence in this case shows that WMATA rendered appropriate aid to Plaintiff following this unfortunate incident.  *See Harris v. Washington Metro. Area Transit Auth.*, 544 F. Supp. 3d 53, 61 (D.D.C. 2021) (holding that WMATA satisfies the duty to render aid when a station manager reports an assault to the MTPD).

### C.  Plaintiff Is Not Entitled To Discovery

As a final matter, Plaintiff has not shown that he should be allowed to conduct additional discovery before the Court resolves WMATA's motion for summary judgment.  Pursuant to Fed. R. Civ. P. 56(d), the Court may defer considering or deny a motion for summary judgment, if the nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition to that motion.  Fed. R. Civ. P 56(d).  But such relief is not warranted when the nonmovant has been afforded an opportunity to conduct discovery and fails to identify the specific information that would create a genuine dispute of a material fact. *Gordon v. CIGNA Corp.*, 890 F.3d. 463, 478-79 (4th Cir. 2018).  While the Plaintiff seeks to conduct additional discovery of WMATA and its employees before the Court resolves

WMATA's motion for summary judgment, the litigation history for this case makes clear that Plaintiff has already been afforded an opportunity to conduct such discovery during the discovery phase of this case, which commenced on January 2, 2024, and closed on June 11, 2024.  ECF No. 13; *see also* ECF No. 33-1 at 6-7; ECF No. 33-2 at ¶ 8. (Ingram Affidavit seeking to obtain, among other things, "communications between the train operator and the station manager regarding the assault on plaintiff and the train operator and station manager's duty to ensure the safe passage of Plaintiff on the WMATA train.")  Perhaps, more importantly, the Plaintiff fails to explain how the discovery he now seeks would create a genuine issue of material fact sufficient to preclude entry of summary judgment in WMATA's favor.  *See generally* ECF Nos. 33-1; 33-2; Fed. R. Civ. P. 56(d).  And so, the Court declines to grant the Plaintiff's request to conduct additional discovery before resolving WMATA's motion for summary judgment.

## V.      CONCLUSION

In sum, the Plaintiff's negligence claim based upon the failure to provide adequate security claim is barred by the doctrine of sovereign immunity.  The undisputed material facts in this case also show that the Plaintiff cannot establish the elements of a negligence claim to prevail on this claim.  And so, for the foregoing reasons, the Court:

(1) **GRANTS** WMATA's motion for judgment on the pleadings or, alternatively, for summary judgment (ECF No. 18); and

(2) **DISMISSES** the complaint.

A separate Order shall issue.


**IT IS SO ORDERED.**



s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge